U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
**FILED**

APR 1 3 2012

CLERK, U.S. DISTRICT COURT

By _____
Deputy

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION**

| | | |
|---|---|---|
| BYRON MONTGOMERY,<br>PLAINTIFF, | §<br>§<br>§ | |
| VS. | §<br>§ | CIVIL ACTION NO. 4:11-CV-510-A |
| MICHAEL J. ASTRUE,<br>COMMISIONER OF SOCIAL SECURITY,<br>DEFENDANT. | §<br>§<br>§<br>§ | |

**FINDINGS, CONCLUSIONS AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE
AND
NOTICE AND ORDER**

This case was referred to the United States Magistrate Judge pursuant to the provisions of

Title 28, United States Code, Section 636(b).  The Findings, Conclusions and Recommendation

of the United States Magistrate Judge are as follows:

**FINDINGS AND CONCLUSIONS**

**I.      STATEMENT OF THE CASE**

On March 1, 2010, Plaintiff Byron Montgomery applied for disability insurance benefits

("DIB"), alleging that his disability began on August 31, 2007.  (Tr. 18, 23–24.)  Thereafter, on

March 6, 2010, the Social Security Administration ("SSA") denied Montgomery's application.

(Tr. 91–93.)  Upon reconsideration, the SSA affirmed its denial, stating that Montgomery lacked

sufficient work credits for insured status because Montgomery's tax returns were submitted after

the three year, three month, and fifteen day statute of limitations.  (Tr. 95; *see* Tr. 18.)  On May

11, 2010, Montgomery requested a hearing before an administrative law judge ("ALJ"), claiming

that his tax returns were not barred by the statute of limitations and should have been used to

amend a DIB application that he filed in 2008.  (Tr. 102–03.)

At the hearing, Montgomery produced a letter dated December 28, 2007, which confirmed an in-office appointment with an SSA representative on January 3, 2008.  (Tr. 133.) Montgomery testified that he attended the 2008 appointment, bringing with him all of the requested documents.  (Tr. 168.)  He stated that after approximately forty-five minutes, the representative told him that he needed to file additional tax returns to meet the insured status requirements and that as soon as he did, "everything [would] be fine." (Tr. 168.)  Montgomery could not, however, remember whether an application was filed during the appointment and produced no evidence other than the appointment-confirmation letter.  (Tr. 169, 171.)

The ALJ affirmed the SSA's denial of Montgomery's application, finding the following facts: (1) Montgomery did not file an application for DIB during his January 2008 appointment or at any other time prior to his 2010 application; (2) Montgomery's tax returns were barred by the statute of limitations, which precluded their use to establish the requisite work credits; and (3) without sufficient work credits, the SSA properly denied Montgomery's 2010 application. (Tr. 18–22.)  Subsequently, the Appeals Council denied Montgomery's request for review, leaving the ALJ's decision to stand as the final decision of the Commissioner.  (Tr. 2.)

## II.    STANDARD OF REVIEW

Disability insurance is governed by 42 U.S.C. Chapter 7, Subchapter II, and numerous regulatory provisions govern disability insurance benefits.  *See* 20 C.F.R. Ch. III, pt. 404.  As with all social security cases, judicial review of the Commissioner's findings of fact are limited to determining whether the findings are supported by substantial evidence on the record as a whole and whether the proper legal standards were applied to evaluate the evidence.  42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive.").

Substantial evidence is such relevant evidence as a responsible mind might accept to support a conclusion. *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001). It is more than a mere scintilla, but less than a preponderance. *Id.* A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings support the decision. *Id.* This Court may neither reweigh the evidence in the record nor substitute its judgment for the Commissioner's, but will carefully scrutinize the record to determine if the evidence is present. *Harris v. Apfel*, 209 F.3d 413, 417 (5th Cir. 2000); *Hollis v. Bowen*, 837 F.2d 1378, 1383 (5th Cir. 1988).

### III.   ISSUES

In his brief, Montgomery presents the following issues to the Court:

1. Whether the ALJ erred in finding that he did not file an application for DIB in 2008;

2. Whether the ALJ erred in finding that Montgomery did not meet the alternative filing requirements;[1]

3. Whether the ALJ erred by failing to consider the conduct of the SSA representative in allegedly concealing his 2008 application file; and

4. Whether the ALJ erred in refusing to allow Montgomery to reopen and update his earnings on his 2008 application.

### IV.   DISCUSSION

#### A.   2008 Application

Montgomery initially contends that the ALJ erred in finding that he did not file an application for DIB in 2008. (Pl.'s Br. at 6.) Montgomery asserts that the ALJ erred by erroneously implying that the following three requirements were needed to file an application for DIB: (1) a physical signature must be on the paper application; (2) Montgomery must have

---

[1] Montgomery asserts this claim on two grounds, which the Court will consider jointly.

received a physical copy of the completed application; and (3) there must be a record of the filing. (Pl.'s Br. at 6.)

Montgomery's interpretation of the ALJ's decision, however, is misplaced. The ALJ did not, by implication or otherwise, list the requisite elements Montgomery had to meet in order to file an application with the SSA. Instead, the ALJ reviewed the evidence that could have been produced to support Montgomery's alleged filing date. Because Montgomery failed to offer any evidence of filing, the ALJ found that he did not file an application in 2008.

After careful review of the record, the Court concludes that the ALJ's decision is supported by substantial evidence. The ALJ found that Montgomery did not file an application for DIB in 2008 because there was no evidence in the record that Montgomery filed any application for benefits, written statement, request, or notice in which he sought any Social Security benefits until his current application for DIB, filed on March 1, 2010. (Tr. 20.) During the hearing, the ALJ repeatedly asked Montgomery whether he actually filed an application in his 2008 meeting or whether it was merely an appointment. (Tr. 167–69.) To this, Montgomery replied: "I believe so, but, you know, it's been a couple of years . . . [a]nd I've had a lot of chemo since then." (Tr. 169.) After pointing out the complete absence of a 2008 application in the record, the ALJ asked Montgomery whether he had any paperwork to support his statement. (Tr. 170–71.) Montgomery produced only the appointment-confirmation letter that he received in 2007. (Tr. 171.)

Notwithstanding the lack of evidence, Montgomery contends that he met the broad filing requirements of the Code of Federal Regulations ("Regulations") as outlined in the SSA's Program Operations Manual System ("POMS").[2] (Pl.'s Br. at 7.) Montgomery asserts that he

---

[2] In his brief, Montgomery cites several times to POMS DI 11005.010. The Court notes that in late March 2012, the SSA modified the POMS by revising and moving the content in DI 11005.010 to DI 11005.001.

filed an accepted form of a DIB application during his 2008 appointment, which was signed by attestation—an alternative form of signature. (Pl.'s Br. at 7.) Pursuant to 20 C.F.R. § 404.610, an application will generally be considered a claim for Social Security benefits if it meets the following conditions: (1) it is filed on a prescribed form of application as set forth in 20 C.F.R. § 422.505(a); (2) it is completed and filed with an SSA employee at an authorized location; (3) it is signed by the claimant or an authorized representative; and (4) the claimant is alive at the time the application is filed. 20 C.F.R. § 404.610. The Regulations recognize three types of forms for an application for DIB: (1) traditional pre-printed forms; (2) applications completed by employees on their respective computers based on information provided by applicants; and (3) applications submitted on the SSA's website. *See* 20 C.F.R. § 422.505(a).

Montgomery alleges that during his 2008 appointment, an SSA representative filed an application for DIB, which he signed either physically or by attestation. (*See* Pl.'s Br. at 7–10.) As discussed above, there is no evidence in the record of any actual application filed in 2008. Thus, the ALJ's finding that Montgomery did not file an application is supported by substantial evidence. Furthermore, contrary to Montgomery's claims, signature by attestation is not an action that Montgomery himself could have taken. *See* POMS GN 00201.015(B)(1)(a) ("Attestation is the action *taken by a SSA employee* of confirming and annotating on MCS, MSSICS, or RPS the proper applicant's [i]ntent to file or complete a claims-related form.") (emphasis added). Therefore, Montgomery's unsupported testimony was, by itself, insufficient to establish that an alleged application was signed by attestation.

B.     **Alternative Filing Requirements**

Montgomery also asserts that the ALJ erred in finding that he did not file an application in 2008 because his actions met the alternative filing requirements of the Regulations. (Pl.'s Br.

at 10.)  In support of this contention, Montgomery cites 20 C.F.R. § 404.630, which generally provides that the SSA will accept a protective filing date as the date on which an applicant: (1) files a written statement that indicates an intent to claim benefits, (2) signs the statement, (3) subsequently files an application within six months of a notice sent by the SSA advising the applicant of the need to file, and (4) is alive when the application is filed.  20 C.F.R. § 404.630.

Montgomery claims that he met all of the requirements of section 404.630 when he appeared at the SSA office for his appointment on January 3, 2008.  (Pl.'s Br. at 10–12.)  As to the first alternative-filing requirement, Montgomery alleges that he completed two forms that show his intent to claim benefits—SSA Form-827 and Form-4184—which he brought with him to the 2008 appointment.   Assuming that these forms constitute written statements of Montgomery's intent to claim benefits, these forms were not provided to the ALJ and are not in the record of the SSA.  (Pl.'s Br. at 11–12; Tr. 25–26)  Therefore, based on the lack of evidence to show that Montgomery filed a written statement of intent to claim DIB, the record clearly supports the ALJ's conclusion that Montgomery failed to satisfy the alternative filing requirements of the Regulations.

Furthermore, Montgomery improperly overlooks the third requirement for alternative filing: specifically, the need to file an application within six months of receiving notice that an application was required.   20 C.F.R. § 404.630(c).   Instead, Montgomery claims that the "requirement was waived because the [SSA] failed to send [him] the required notice giving him 6 months to file an application." (Pl.'s Br. at 12.)  Montgomery's assertion, however, ignores the notice contained in the appointment-confirmation letter that he received in 2007.  (Tr. 25–26.)  In the letter, the SSA stated: "We can use the date you contacted us as your filing date for Social Security benefits if you file an application within 6 months of the date of this letter." (Tr. 25.)

Because the letter notified Montgomery that he needed to apply within six months, his failure to do so precludes the use of the 2007 letter as his protected filing date.[3]

Additionally, Montgomery claims that he met the alternative filing requirements in 2008 because the SSA representative gave him misinformation by failing to disclose the three year, three month, and fifteen day statute of limitations for filing his tax returns.  (Pl.'s Br. at 13–14.) Montgomery contends that the representative's failure to disclose the applicable statute of limitations at the January 3, 2008, meeting constitutes "incomplete" information.  (Pl.'s Br. at 14.)

The Regulations provide that the SSA may establish an earlier filing date if, in response to an applicant's inquiry, it gave the applicant misinformation about his eligibility for DIB, causing the applicant not to file.   20 C.F.R. § 404.633.   Misinformation is defined as "information which [the SSA] consider[s] to be incorrect, misleading, or incomplete in view of the facts which [the applicant] gave to the [SSA], or of which the [SSA] was aware or should have been aware, regarding [the applicant's] particular circumstances."   20 C.F.R. § 404.633(c)(1).

Generally, the burden is on the claimant to show that his failure to file was caused by misinformation.  *Grubart v. Shalala*, 913 F. Supp. 243, 247 (S.D.N.Y.), *aff'd, Grubart v. Chater*, 104 F.3d 353 (2d Cir. 1996); *Thorp v. Apfel*, No. 97-CV-809H, 1998 WL 683767, at *3 (W.D.N.Y. Sept. 17, 1998) ("The burden of proof is on the claimant to demonstrate that she received misinformation from an agency employee that caused her to fail as of a particular date to apply for monthly insurance benefits.").  Pursuant to the Regulations, "to find that the information [Montgomery] received was incomplete, the [representative] must have failed to

---

[3] Although unclear, it appears that Montgomery is claiming that he filed an application for DIB during his January 2008 meeting but that his protected filing date is actually December 2007—the date he received the appointment-confirmation letter. (*See* Pl.'s Br. at 12.)

provide [Montgomery] with the appropriate, additional information which he or she would be required to provide in carrying out his or her official duties." 20 C.F.R. § 404.633(c)(2).   The substantial evidence rule applies to findings of when an application should be deemed filed due to misinformation.  *Haley v. Barnhart*, No. 01-4079-SAC, 2003 WL 23218083, at *4 (D. Kan. Oct. 16, 2003).   Therefore, the Court's review is limited to the determination of whether the ALJ's decision is supported by substantial evidence.

The record shows that Montgomery provided no authority to support his contention that the SSA representative was required to disclose the statute of limitations for filing his tax returns. Notwithstanding the fact that Montgomery bears the burden of proof, the Court finds no authority that requires SSA representatives to provide such information.  *See* 20 C.F.R. § 404.633(c)(2) (stating that incomplete information is a lack of information that the representative "would be required to provide in carrying out his or her official duties").  The POMS provide that when an SSA representative assists a claimant in applying for DIB who does not meet the insured status requirement, the representative must "[t]ell the claimant of [the] probable disallowance" and "[p]rovide the claimant an opportunity to submit additional evidence or information." POMS 11005.010(D)(2).[4]  Consequently, SSA representatives are not required to inform the applicant of any specific filing requirement for the additional information—only that such information is required.  Therefore, the Court cannot hold that the SSA representative provided Montgomery with misinformation because the representative was not required to disclose the statute of limitations.

---

[4] The Court notes that, as indicated above, the SSA recently modified the POMS.   Section DI 11005.010(D)(2) has now been moved to section DI 11005.001.  The old section DI 11005.001(D)(2) directed an SSA representative to: (a) tell the claimant of the probable disallowance; (b) provide the claimant an opportunity to submit additional evidence or information; and (c) if the additional evidence does not result in meeting the insured status requirement: (i) curtail further development; (ii) document the file with the reason for curtailing development; and (iii) disallow the claim.

Furthermore, even assuming that the failure to disclose the statute of limitations was "misinformation," the record supports the conclusion that the information did not *cause* Montgomery's failure to file. The Regulations provide not only that misinformation must be given but that the misinformation must cause the applicant not to file. *See* 20 C.F.R. § 404.633(a) ("[W]e may have given you misinformation about your eligibility . . . which *caused you not to file* an application at that time.") (emphasis added). Although Montgomery testified that he was unaware of the statute of limitations, he admitted that the representative informed him that he needed to file additional tax returns. (Tr. 177–78.) When the ALJ asked Montgomery why he waited two years to comply with the representative's instructions, however, Montgomery stated that he began chemotherapy the next day and was hospitalized for approximately seven months. (Tr. 178.) Because Montgomery explicitly stated that he did not timely file his tax returns because of his medical condition, the Court finds that substantial evidence supports the ALJ's conclusion that the representative's alleged misinformation did not cause Montgomery's failure to file. *See Boyd*, 239 F.3d at 704.

In sum, because Montgomery has not established that the representative was required to disclose the statute of limitations and because his testimony supports a reasonable conclusion that his failure to file was not caused by the alleged misinformation, the Court finds that the ALJ's decision was supported by substantial evidence.

## C.     Conduct of SSA Representative

Montgomery further asserts that the SSA field office possessed a record of his 2008 application but either destroyed it before his 2010 hearing or failed to provide it to the ALJ. (Pl.'s Br. at 14.) Consequently, Montgomery contends that the ALJ erred by failing to consider the wrongful conduct of the field office personnel. (Pl.'s Br. at 14.) Montgomery claims that the

ALJ continually stated the "evidence" did not show that an application was filed, thereby confirming the existence of extraneous evidence of Montgomery's 2008 application. However, a more logical interpretation of the ALJ's use of the term "evidence" is that the ALJ was merely referring to the lack of evidence.

Montgomery also argues that an SSA representative later confirmed the existence of the 2008 application file. On May 5, 2010, an SSA representative contacted Montgomery's attorney after Montgomery's 2010 application was denied. (Tr. 100–01.) In the written call report, the representative wrote that Montgomery's attorney "state[d] that claimant [Montgomery] should be able to add SSA earnings from 2004 forward based on the reopening of a 2007 DIB application." (Tr. 100.) According to Montgomery, the representative's report proves that the field office possessed his 2008 application because "at no time did [the representative] ever question the filed status of the 2008 claim and she even referred to the 2008 filing" in the call. (Pl.'s Br. at 15.) Montgomery also asserts that approximately one week after the hearing, he went to the SSA field office to retrieve his 2008 application. (Tr. 14; Pl.'s Br. at 15.) According to Montgomery, an SSA representative was able confirm his 2008 appointment but, after further research, informed Montgomery that his application file had been deleted. (Tr. 14; Pl.'s Br. at 15.)

Based on a review of the evidence in the record, the Court finds that the representative's call log supports the ALJ's finding that the representative did not possess a 2008 application. The call log merely reveals the statements conveyed by Montgomery's attorney to the representative during their conversation. Furthermore, the SSA representative's ability to locate the record of Montgomery's 2008 appointment does not prove that the SSA also had a record of Montgomery's application that he allegedly filed during the appointment. The representative's statement that Montgomery's file had been deleted appears to be based on the representative's

reliance on Montgomery's statements that such a file existed. Consequently, the Court disagrees with Montgomery's contention that the evidence "clearly" shows the field office destroyed or withheld his 2008 application file. The Court finds that there is substantial evidence to support the ALJ's decision and the ALJ did not err in failing to consider the field office's alleged malfeasance.

### D.    Reopening of 2008 Application

Finally, Montgomery claims that the Regulations allowed him to use his tax returns to update his earnings record and that the ALJ erred by failing to reopen his 2008 application. Montgomery argues that, pursuant to 20 C.F.R. § 404.988(b), he should have been allowed to reopen his 2008 application after a showing of "good cause." The Regulations provide, however, that as a condition for reopening, there must be "[a] determination, revised determination, decision, or revised decision." 20 C.F.R. § 404.988(b). In this case, there is no evidence that there was ever a determination, revised determination, decision, or revised decision based upon Montgomery's January 3, 2008, visit to the SSA field office. Montgomery even appears to acknowledge this as he states that his alleged 2008 DIB application "had never been officially denied." (Pl.'s Br. at 16.) Without a determination on Montgomery's 2008 alleged application, the ALJ properly concluded that there was no file to reopen. (Tr. 21.)

## RECOMENDATION

It is recommended that the Commissioner's decision be affirmed.

## NOTICE OF RIGHT TO OBJECT TO PROPOSED
## FINDINGS, CONCLUSIONS AND RECOMMENDATION
## AND CONSEQUENCES OF FAILURE TO OBJECT

Under 28 U.S.C. § 636(b)(1), each party to this action has the right to serve and file specific written objections in the United States District Court to the United States Magistrate

Judge's proposed findings, conclusions and recommendation within fourteen (14) days after the party has been served with a copy of this document. The United States District Judge need only make a *de novo* determination of those portions of the United States Magistrate Judge's proposed findings, conclusions and recommendation to which specific objection is timely made. *See* 28 U.S.C. § 636(b)(1). Failure to file, by the date stated above, a specific written objection to a proposed factual finding or legal conclusion will bar a party, except upon grounds of plain error or manifest injustice, from attacking on appeal any such proposed factual findings and legal conclusions accepted by the United States District Judge. *See Douglass v. United Servs. Auto Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996) (en banc).

## ORDER

Under 28 U.S.C. § 636, it is hereby ORDERED that each party is granted until **May 3, 2012,** to serve and file written objections to the United States Magistrate Judge's proposed findings, conclusions and recommendation. It is further ORDERED that if objections are filed and the opposing party chooses to file a response, the response shall be filed within seven (7) days of the filing date of the objections.

It is further ORDERED that the above-styled and numbered action, previously referred to the United States Magistrate Judge for findings, conclusions and recommendation, be and hereby is returned to the docket of the United States District Judge.

SIGNED April 13, 2012.

JEFFREY L. CURETON
UNITED STATES MAGISTRATE JUDGE

JLC/knv